## SIMPSON v. STACKHOUSE.

The *onus* of showing that an alteration in a material part of a negotiable instrument was lawfully made, is on the holder.    And where the place of payment is in a different handwriting from the body of the instrument, there is a presumption of alteration.

IN error from the District Court of Allegheny.

This was an action against an endorser of a note drawn by Sankey, who resided in Mercer county.    It was proved that the body of the instrument was in the handwriting of defendant; but that the words " payable at the Bank of Pittsburgh," written at the end of the instrument, were in a different handwriting.

The defendant's point was, that it was incumbent on the plaintiff to show these were written at the time of the endorsement, or with defendant's consent.

The court said the jury must decide this as a matter of fact.

*Shaler* and *Stanton*, for plaintiff in error.

*Metcalf*, contrà.

*Sept.* 26.    GIBSON, C. J.—As a general rule the law presumes, in favour of innocence, that an alteration in an instrument is a legitimate part of it, till the contrary appears; but it is not extended to negotiable securities.    The principle of the English cases is, that an alteration so far apparent on the face of a bill or note as to raise a suspicion of its purity, makes it incumbent on the plaintiff to prove that it is still available, and that it is not incumbent on the defendant to disprove it.    Johnson v. The Duke of Marlborough, 2 Stark. Rep. 313; Henman v. Dickinson, 5 Bing. 183; Bishop v. Chambre, 3 C. & P. 53; and Leykariff v. Ashford, 12 Moore, 281, establish that the general presumption of innocence in such a case is overborne by the nature of the instrument.    It was doubted by the learned commentators on Mr. Phillips's Treatise on the Law of Evidence, vol. 2, p. 229, whether the principle of the English decisions would be adopted by the American courts.    The later decisions in the United States are discrepant, but their pre-

ponderance is in favour of restraining the general rule to deeds and writings not negotiable. In McMicken *v.* Beauchamp, 2 Miller's Louis. Rep. 290, it was ruled that interlineations in a material part of an acceptance are presumed to have been forged, till the contrary is shown; in Hills *v.* Barnes, 11 N. H. Rep. 395, that an unexplained alteration of a promissory note, apparent on the face of it, is presumed to have been made after execution and delivery; in the Commercial and R. R. Bank *v.* Lum, 7 Howard's Miss. Rep. 414, that an alteration on the face of a promissory note must be shown by the holder to have been innocently made; and in Warren *v.* Layton, 3 Harring. 404, that a party cannot recover on an altered note without explanatory proof. So far the American cases are consistent. But, on the other hand, it was ruled in Gooch *v.* Bryant, 1 Shep. 386, that an alteration of a figure in the date of a note, proved to be such by inspection, is not evidence of itself that it was made after execution and delivery; in Crabtree *v.* Clark, 7 Shep. 337, that it is for the jury to determine—by inspection, I suppose—whether an unexplained alteration, apparent by inspection, was made before or after execution; and in Davis *v.* Carlisle, 6 Ala. Rep. 707, that if it cannot be shown by whom a note has been altered, the *court* cannot presume it to have been altered by the holder, but the *jury may*. There are two indecisive cases. In delivering the opinion of the Supreme Court of New Jersey, in Sayre *v.* Brookfield's Administrators, 2 South. 737, Mr. Justice Southard, neither admitting nor denying the principle of the English decisions, thought that the insignificance of the alteration in that case, which made a difference in the interest of only a few cents, was sufficient to show the integrity of the transaction. In the other case, Runnion *v.* Crane, 4 Blackf. 466, a jury of inquiry were allowed to disregard an unexplained alteration of a note, doubtless because they could not go behind the interlocutory judgment. The decision is authority for nothing. But how stands the question on principle? The English decisions are founded in reason, and not in considerations growing out of the stamp acts. He who takes a blemished bill or note, takes it with its imperfections on its head. He becomes sponsor for them, and though he may act honestly, he acts negligently. But the law presumes against negligence as a degree of culpability; and it presumes that he had not only satisfied himself of the innocence of the transaction, but that he had provided himself with the proofs of it to meet a scrutiny he had reason to expect. It is of no little weight, too, that the altered instrument is found in his hands, and that no person

else can be called on to speak of it; for without a presumption to sustain him, the maker would in every case be defenceless. It may be said that the holder, with such a presumption against him, would also be defenceless. But it was his fault to take such a note. As notes and bills are intended for negotiation, and as payees do not usually receive them when clogged with impediments to their circulation, there is a presumption that such an instrument starts fair and untarnished, which stands till it is repelled; and a holder ought, therefore, to explain why he took it branded with marks of suspicion which would probably render it unfit for his purposes. The very fact that he received it, is presumptive evidence that it was unaltered at the time; and to say the least, his folly or his knavery raised a suspicion which he ought to remove. The maker of a note cannot be expected to account for what may have happened to it after it left his hands; but a payee or endorsee who takes it, condemned and discredited on the face of it, ought to be prepared to show what it was when he received it. Now, it is agreed that the note before us was drawn and endorsed for the accommodation of the maker who negotiated it, and who consequently stands as if it had been drawn by the endorsee and endorsed by himself, as it might just as well have been, the difference being in the plan of the security and not in its effect. It was distinctly proved that the body of the note is in the handwriting of the defendant, and that the words "payable at the Bank of Pittsburgh," are not. The difference in the character of the writing is obvious; and the additional words are broken into two half lines, for to have comprised them in one would have required it to be run through the signature, and they were necessarily crowded into the left hand corner, at the bottom of the paper. That is certainly not the ordinary collocation of the lines of a commercial instrument. Mr. Chitty says in his Treatise on Bills, p. 213, that a drawee ought not to accept a bill which has the *least appearance* of alteration ; and it was not disputed at the trial that this note had that appearance, or that the alteration was in a material part of it, its effect being to dispense with personal notice of dishonour. The question was on the *onus*, and the defendant prayed instruction that the body of the note being in his handwriting, and the questionable words being in a different hand, it was incumbent on the plaintiff to show that they were in the instrument at the time of endorsement, or with the defendant's consent: to which the court responded that the jury must decide as a matter of fact. The response was a refusal of the prayer, and a denial that there was any presumption to lead

to a particular conclusion. There was no direct evidence on the subject; the deposition of Sankey, the drawer, who had given credit to the note by his name, having been properly ruled out; but on the principle of the English cases, and a majority of our own, the defendant's prayer ought to have been granted.

Judgment reversed, and a *venire facias de novo* awarded.