Miners Savings Bank of Pittston, Appellant,
*v.* Naylor et al.

Argued April 14, 1941. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*M. J. Mulhall,* with him *John T. Mulhall,* for appellant.

*William S. McLean, 3rd,* with him *Charles B. Waller,* for appellees.

OPINION BY MR. JUSTICE PARKER, May 27, 1941:

This is a suit in assumpsit on a promissory note which contained a material alteration. The case was called for trial before a jury and, after plaintiff had produced his proofs and made certain offers, a compulsory nonsuit was entered. The appeal, which was taken from a refusal to take off the nonsuit, raises questions of pleading and procedure.

The plaintiff set forth in its statement of claim a copy of a promissory note of this tenor: "Scranton, Pa., Sept. 2, 1931. On demand after date for value received I promise to pay to the order of ourselves $35000⁰⁰/₁₀₀. The sum of $35000 and 00 cts Dollars at the Union National Bank of Scranton, Pa. without defalcation." It was alleged that it was signed by fourteen persons and endorsed by the makers and that the note was delivered to the plaintiff, Miners Savings Bank of Pittston, for value. The copy in the statement of claim disclosed no altera-

tions or erasures. Ten of the defendants were served and they, together with W. F. Barron, joined in an affidavit of defense in which they denied that they signed or delivered the note declared on.

This was a second trial of the case before the same judge. The record of the first trial is not included in the printed record presented to us, but we gather from the opinion of the court certain facts with reference thereto. At the first trial, after the original note had been produced and the plaintiff had proved the signatures and endorsements, it offered certain proofs with relation to the alterations. Counsel for defendants and the trial judge were then of the opinion that the original note produced was not the note set forth in the statement of claim and that this constituted such a variance between allegata and probata as to exclude the proofs which plaintiff proposed to make. After consultation, a juror was withdrawn and the case was continued to afford an opportunity for a rule to amend and for consideration of the question by the trial judge. The amendment had not been made when the case was called for trial a second time.

At the second trial, the plaintiff produced a note in all respects corresponding with the copy set forth in its declaration except that the original showed that it had been signed and endorsed by an additional party, one Jacob Kurlanchek, and that lines had been run through his signatures cancelling them. The defendants who appeared and defended stipulated that the signatures as makers and endorsers on the original note were their signatures. Plaintiff then produced a witness and proposed to prove that the note was then in the same condition as it was when it was negotiated at the plaintiff bank. The offer was objected to by defendants and the trial judge sustained the objection upon the ground that the note must first be proved and received in evidence before such testimony as was tendered could be heard. The judge was evidently of the opinion that there was a

fatal variance and that the proofs could not be received under the pleadings. We believe this evidence should have been received. Orderly and logical procedure would seem to require that the plaintiff, in attempting to explain the alteration, should first show whether the alteration was made before or after it was negotiated with the bank.

The plaintiff offered to place in the record a photostatic copy of the original note. The court, as we understand the ruling, received it for that purpose only and indicated that it was not being received in evidence as the alteration had not yet been explained. We interpret this as a declaration by the plaintiff that such photostatic copy was a precise copy of the obligation on which its claim was based.

The plaintiff next proposed to prove by witnesses that all the makers and endorsers of the note in question were directors and stockholders of the Peoples Savings & Trust Company of Duryea; that prior to September 2, 1931, an examination of the affairs of the bank was made by the Secretary of Banking, which disclosed an impairment of capital and surplus of the bank; that the Secretary then made demand upon the makers and endorsers of the note to make good the impairment of capital and surplus; that the makers then agreed to make a note payable to themselves and place it in the hands of W F. Barron, treasurer of the bank, for the purpose of negotiation to the end that the impairment be made good; that the note was executed and endorsed, but that prior to negotiation with the plaintiff bank the name of Jacob Kurlanchek was cancelled or stricken out as maker and endorser; that Barron received from the plaintiff bank in exchange for the note five certificates of deposit totaling $35,000, receiving the same as representative of the directors, defendants herein; that the makers of the note in suit had knowledge that he had permitted Jacob Kurlanchek to cancel and strike out his name as maker and endorser; that they recognized and ratified his act by

paying several installments of interest on said note and pledging the certificates of deposit, which had been delivered by the bank as a consideration for the note, to the Secretary of Banking to make good the impairment of capital and surplus; and that the Duryea bank having passed into the hands of the Secretary for the purpose of liquidation, the certificates were endorsed to the Secretary of Banking on August 29, 1932, in accord with the agreement of the directors and the makers of the note.

The plaintiff then moved the court for permission to amend its declaration, the proposed amendment corresponding to the proofs just offered including the attaching of a photostatic copy of the note. The court below refused the motion to amend and also refused a motion of plaintiff to withdraw a juror and continue the case. Thereupon, the plaintiff having rested, a motion was made for a compulsory nonsuit which was granted.

Two questions are presented for our consideration, to wit: (1) Whether there was a variance between allegations and proofs by reason of the fact that the alteration was not shown in the copy made part of the statement of claim; and (2) whether the compulsory nonsuit was properly entered under the state of the record when plaintiff rested.

We will refer to certain provisions of the Negotiable Instruments Law which are fundamental here. "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers": Act of May 16, 1901, P. L. 194, §124 (56 PS §276). An alteration is material which changes "the number or the relations of the parties": §125 (56 PS §278). "Where an instrument containing the words 'I promise to pay' is signed by two or more persons they are deemed to be jointly and severally liable thereon": §17 (56 PS §22). "An instrument is negotiated when it is transferred

from one person to another in such manner as to constitute the transferee the holder thereof": §30 (56 PS §81). It follows that the note in suit contained a material alteration and that proofs were therefore required to be made on that basis and that the note, if valid, was the joint and several obligation of the makers.

We are of the opinion that there is no merit in the conclusion of the court that the failure to note the alteration in the copy set forth in the declaration formed the basis for concluding that there was a fatal variance between the allegations and proofs. The original note had been produced at the first trial so that defendants at the second trial knew that the note contained an alteration or cancellation as well as the exact nature of such change. The Practice Act of 1915, P. L. 483, §5 (12 PS §386), provides: "Every pleading shall have attached to it copies of all notes . . . upon which the party pleading relies for his claim." While we have held that the copy must set forth the whole instrument (*Finch v. White*, 190 Pa. 86, 42 A. 457; *McCready v. Gans*, 242 Pa. 364, 89 A. 459), it would not be contended that a photostatic reproduction of the instrument is required to be furnished. If we accept plaintiff's offers, as we must for the present purpose, the changes were made before the note was negotiated and the bank had no claim against Kurlanchek. He was not a party to the note and he was not included as a defendant. Aside from all this the plaintiff incorporated in the record, by permission of the court and with the acquiescence of defendants, a photostatic copy of the note. The claim of the plaintiff was thereby definitely fixed and the defendants were fully apprised of the alterations so that the objection in this respect becomes a shallow technicality without substance. In fact the court below, in its opinion, said: "That being a matter of form, we would have permitted an amendment at the first trial were that the only trouble and had the motion been made." The circumstances in the case of *Berks County Trust Co. v. Lyte,*

250 Pa. 543, 95 A. 719, are distinguishable from those shown here. In any event, the plaintiff has now offered to amend, to which offer we will give further consideration.

The serious question presented to us arises by reason of the granting of the nonsuit after plaintiff's offers of evidence were rejected and its motion to amend its statement was refused. The court below, in a carefully prepared opinion, has recorded for the benefit of the parties and this court its reasons for its action. Those reasons were, briefly and in substance, that the proposed amendment explaining when and under what circumstances the erasure or cancellation of the Kurlanchek signatures was made presented a situation that defendants could not be expected to be prepared to meet without notice, and that the plaintiff failed to take advantage of an opportunity given it to amend before trial, thereby causing serious delay in this litigation now long extended. It is apparent that the nonsuit was granted not because the offers of proof, if fulfilled, taken with the proposed amendments, would not have made out a prima facie case for the jury, but because the presentation of the amendment was unduly delayed. On the oral argument counsel for the defendants also contended that the amendment introduced a new cause of action after the statute had run on the claim. We are all of one mind that the motion to amend should have been granted and the proofs received.

While the right to amend pleadings is ordinarily a matter resting in the sound discretion of the trial judge (*Trabue v. Walsh,* 318 Pa. 391, 393, 177 A. 815), amendments should be allowed with great liberality at any stage of the case unless they violate the law, as, for example, by introducing a new cause of action after a statute of limitations has run, or prejudice the rights of the opposing party: *Knapp v. Hartung,* 73 Pa. 290, 294; *Joynes v. Penna. R. Co.,* 234 Pa. 321, 83 A. 318; *Tyrrill v. Lamb,* 96 Pa. 464, 467. The right to amend is liberally

construed or otherwise justice would be defeated through a mere mistake as to the form of the action: *Wright v. Eureka T. Copper Co.,* 206 Pa. 274, 55 A. 978; *Radel v. Seib,* 105 Pa. Superior Ct. 75, 159 A. 182; *Barrilo v. Frank,* 116 Pa. Superior Ct. 461, 463, 177 A. 58.

"The tests to be applied when the question presented is whether an amended statement presents a new and different cause of action are, would a judgment bar any further action on either, does the same measure of damages support both, is the same defense open in each, and is the same measure of proof required?": *Goldberg v. Friedrich,* 279 Pa. 572, 576, 124 A. 186. Also, see *Rochester Boro. v. Kennedy,* 229 Pa. 251, 78 A. 133; *Rutherford Water Co. v. Harrisburg,* 297 Pa. 33, 37, 146 A. 113. If the amendment is allowed the action will still be on the same note and against the same parties, the only change being that the declaration makes more specific the facts upon which the plaintiff depends. A judgment would be a bar against any further action on the note, it leaves open to the defendants the same defenses, and the measure of proof remains the same. The proposed amendment does not set up a new cause of action. We find nothing in the record even tending to show that the rights of the defendant would be prejudiced by the amendment.

Since this note contained a material alteration apparent on examination, the burden was upon the holder to explain it before it was received in evidence: *Neff v. Horner,* 63 Pa. 327; *Citizens National Bank v. Williams,* 174 Pa. 66, 34 A. 303. The law presumes that one who has taken a negotiable instrument containing a material alteration "had not only satisfied himself of the innocence of the transaction, but that he had provided himself with the proofs of it to meet a scrutiny he had reason to expect": Chief Justice GIBSON in *Simpson v. Stackhouse,* 9 Pa. 186, 187.

That the onus was on the plaintiff to prove, at the very least, that the note was at the time of the trial in the

same condition as it was when negotiated with the plaintiff before the note could be received in evidence is not open to argument. The question that arose here was the extent to which plaintiff was called to go. So far as the facts have been presented, it would appear that the change was made before negotiation of the note. Counsel for plaintiff was evidently of the opinion that he was not required initially to go farther than to show that the change must have been made before negotiation and that if the alteration appeared to have been so made the burden of going ahead with the evidence shifted to defendants and they would be required to show facts with reference to any alteration that was made while the note was in the hands of one of their number placed there by defendants for negotiation.

If there is but one name as maker and endorser on a negotiable instrument containing a material alteration and that person negotiates the note at a bank for value and the banker sues the maker, the banker is only required to show that the note contained the alteration when the maker delivered it, as in such circumstances it would be presumed that the maker either made or assented to the alteration. Here the makers and endorsers entrusted the note to one of their own number to act as agent for the group in negotiating it directly to plaintiff. This gives rise to questions as to burden of proof which we are not called upon to decide as the plaintiff by its offer and motion has accepted the burden of showing the assent of the makers to the change. If such assent is shown the case is brought within the specific exception in §124 of the Negotiable Instruments Act. This all goes to show that counsel was presented with a difficult question as to which there does not seem to be a precedent directly in point in any of the decisions of the appellate courts of this state. Under such circumstances counsel is not entirely blameworthy for the delay that has been caused. The proposed amendment and offers of proof avoided this troublesome question and relieved

the court from the responsibility of deciding it. A careful reading of the record has convinced all of us that the motion should have been allowed and that a new trial should be granted. The plaintiff, however, before trial, should present the amendment duly verified in writing and obtain the permission of the court below to file it. We would also call the attention of counsel to the possible question of liability on the part of some of the defendants and not all, in which event rule 2232 (d) of the Rules of Civil Procedure, which is an adaptation of the Joint Suit Act of June 29, 1923, P. L. 981 (12 PS §§685-686), might be applicable.

The judgment of the court below is reversed and a venire facias de novo is awarded.