**Abercrombie Estate**

*John A. Metz, Jr.,* for widow and daughter.

*Hymen Schlesinger,* for claimant.

*William L. Jacob,* for T. E. Clinton Co.

*Sidney J. Watts,* for administrator.

RAHAUSER, J., September 16, 1959. — Decedent, Samuel M. Abercrombie, died intestate January 25, 1958, a resident of the City of Pittsburgh, Allegheny County. Letters of administration were first granted to Ruth Marshall, 5802 Beacon Street, Pittsburgh.

On April 30, 1958, the register of wills cancelled the letters issued to Ruth Marshall and at the same time issued letters to Charles A. Woods, Jr., the widow, Hattie M. Abercrombie, having resigned in his favor.

On May 6, 1958, counsel for Charles A. Woods, Jr., filed a petition praying for a citation on Ruth Marshall, whose letters of administration had been revoked, to show cause why she should not file an account. An answer was filed to this petition and on January 23, 1959, the court directed Ruth Marshall to file an account. It was further ordered that the audit of the account filed by Ruth Marshall should come up for audit at the same time as the audit of the account of Charles A. Woods, Jr.

On January 23, 1959, Ruth Marshall filed her inventory of the estate of Samuel M. Abercrombie. The inventory consisted of cash, a Mercury car and an account of Fire Fighter Sales and Service, all items totaling $10,602.72.

On February 6, 1959, Ruth Marshall filed her account showing disbursements of $1,559.50 and a net balance of $9,043.32.

On November 17, 1958, Charles A. Woods, Jr., filed an inventory showing receipts from balance on deposit in Potter Bank and Trust Company of $9,939.72 and a 1954 Mercury car. All of the assets total $10,239.72.

Mr. Woods filed his account as administrator of this estate on January 5, 1959.

Both accounts came before the court for audit on June 9, 1959. Counsel for the surviving wife and daughter of decedent filed exceptions to the account filed by Ruth Marshall.

Counsel for Ruth Marshall, claiming that she was a creditor of the estate of decedent, filed exceptions to the account of Charles A. Woods, Jr., administrator. At the audit a date was set for hearing testimony relating to the exceptions and to claim against the estate of decedent.

On August 3, 1959, all parties appeared, at which time a full hearing was held on the following:

A. Exceptions to the account of Ruth Marshall.

B. Exceptions to the account of Charles A. Woods, Jr., administrator of the estate of Samuel M. Abercrombie.

C. Claims against the estate of Samuel M. Abercrombie by Ruth Marshall.

We will discuss the matters before the court in the order stated.

Exceptions to the account of Ruth Marshall are as follows:

"1. The following items of disbursements as listed in the account of Ruth Marshall were not incurred by Ruth Marshall in good faith and are not valid claims against the estate of Samuel Abercrombie.

"(a) Letters of administration and short certificates ........................... $ 34.50

"(b) Advertising, newspaper ........... 18.50

"(c) Advertising, Legal Journal ........ 10.00

"(d) Fidelity & Deposit Co. of Maryland, Bond ................................. 136.00

"(e) Garage rent, 5 months at $10 per month to Ruth Marshall ................. 50.00

"(f) Repair of battery ............... 10.00

"(g) Accountant's compensation to Ruth Marshall ...................................... 150.00

"(h) W. L. Jacob and W. L. Jacob, Jr., Attorneys' fees ...................................... 150.00

"(i) Hymen Schlesinger, Attorney's fee ... 350.00

"(j) Notaries' fees—Ruth Marshall ..... 3.50

"(k) Register of Wills fee for filing inventory and account ...................................... 53.00

TOTAL $965.50"

The court is of the opinion that the exceptions must be dismissed.

The court, on January 23, 1959, at a conference where all parties were present, made an order as follows:

"ORDER

"And now, to-wit, this 23rd day of January, 1959, it appearing that Mr. W. L. Jacob, Jr., Mr. Kennedy Smith, Mr. Sidney J. Watts, Mr. Joseph F. Weis and Mr. Hymen Schlesinger having appeared for conference in the above estate.

"IT IS ORDERED, ADJUDGED AND DECREED that this Account be continued for Audit to the March Audit List, 1959, and

"IT IS FURTHER ORDERED that the Account of Mrs. Ruth Marshall be filed, costs for which to be paid by the Estate, and

"IT IS FURTHER ORDERED that the audit of this Account be held contemporaneously with the continued audit of the Administrator d.b.n."

The exceptions, "a, b, c, d, h, i, j, k," filed to the account of Ruth Marshall include exceptions to payment of fee of the register of wills, advertising costs, lawyer fees, bond premiums and notary fees. The court is of the opinion that these costs should be paid by the estate, as they were in a sense necessary considering

the order of court, dated January 23, 1959; especially since this order was concurred in by all parties.

Exceptions "e" and "f" will be dismissed as testimony was offered and not refuted that those expenditures were necessary for the protection of an asset of the estate.

The compensation of the accountant, Ruth Marshall, will be allowed. The testimony indicates that under the circumstances she should not be treated as a person who has improperly intermeddled in a decedent's estate. She apparently believed that she was decedent's cousin and closest relative and so it was natural for her to arrange for his funeral services and subsequently to take out letters on his estate. She is an elderly woman, unfamiliar with court procedure, and while her administration was not free from fault, she was not guilty of fraud or such negligence as would warrant the court in forfeiting her commission. Furthermore, the fact that the letters issued to her were revoked would not bar her right to compensation. See McCune Estate, 76 D. & C. 39, 44, 46. . . .

The exception to disbursement for liability insurance is dismissed. This matter is within the discretion of the administrator. There is no evidence in the record to show that this expenditure was improper.

Ruth Marshall, the original administratrix in this estate, also submitted a claim against the estate in the amount of $10,000. Her claim was based on a check which she produced. The check purported to be payable to her order and signed by decedent, Samuel M. Abercrombie. There was no positive testimony as to the signature on the check although an official of the bank on which the check was drawn testified:

"I am not testifying as a handwriting expert. I am now testifying as to what we would accept in the ordinary course of business. We would accept that as being his signature."

The check on which Ruth Marshall's claim is based bears a blurred date of the month of January 1958, above which is written the figure "24." More important, there is an obvious erasure in the space in which the name of the payee appears, and because of the extent of this erasure it is impossible to say what originally appeared in the space which now contains the name of Ruth Marshall as payee. In addition to these alterations the check appears to have had its form altered, as though a pair of scissors was used to trim something off it. When such an instrument is produced as the basis of a claim against a decedent's estate it is the object of a just suspicion. In Poelcher v. Zink, 375 Pa. 539, 546, the court said:

"It is, of course, true that when it clearly appears on the face of a writing that it has been altered in a material part it is incumbent on the party producing it to account for the alteration, *and until this is done it is not admissible in evidence:* Cornog v. Wilson, 231 Pa. 281, 80 A. 174; Miners Savings Bank of Pittston v. Naylor, 342 Pa. 273, 280, 20 A. 2d 287, 291." (Italics supplied.)

In Cornog v. Wilson, above cited, in speaking of the above rule as to admissibility in evidence of written instruments bearing alterations, the court said, on page 284:

"This rule is more stringent when applied to *negotiable paper* than to other written instruments, and in *relation to it there is no presumption of innocence and the burden of explaining* any apparent material alteration is cast on the holder thereof: [citing cases]. . . ." (Italics supplied.)

See also Nagle Estate, 134 Pa. 31, imposing the duty of explaining an erasure on a check on the holder.

We do not believe that the law as to the burden of explaining the alteration of a negotiable instrument was changed by the provisions of section 3-307 or of

section 3-407 of the Commercial Code of April 6, 1953, P. L. 3, cited by claimant. Section 3-307, subsec. (2), provides:

"When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense": 12 A PS §3-307.

This section does not refer to an instrument bearing a material alteration on its face. Furthermore, it refers to signatures which are admitted or established; here the signature was not admitted and it is questionable if the signature was established since there was no positive testimony that the signature was that of decedent.

Section 3-407, subsec. (1), defines a material alteration as including any alteration which changes the contract of any party thereto in any respect, including any such change in the writing as signed by adding to it or removing any part of it. This would appear to include any erasure in the name of the original payee and the addition of another name, as well as a change in the date of the instrument or the scissoring of the instrument.

Section 3-407, subsection (2), provides:

"As against any person other than a subsequent holder in due course

"(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

"(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given": 12 A. PS §3-407.

This section does not refer to the burden of proof where the instrument bears obvious material altera-

tions on its face. In this state of events it seems logical to place that burden on the holder as the person in the best position to explain it. As the court said in Miners Savings Bank of Pittston v. Naylor, 342 Pa. 273, 280:

"The law presumes that one who has taken a negotiable instrument containing a material alteration 'had not only satisfied himself of the innocence of the transaction, but that he had provided himself with the proofs of it to meet a scrutiny he had reason to expect': Chief Justice Gibson in Simpson v. Stackhouse, 9 Pa. 186, 187."

It is immaterial that one of the parties to the contract is dead, thus rendering it impossible to prove or explain the alteration: Nagle Estate, supra.

If, arguendo, it is conceded that the signature to the check was adequately established, thus establishing a presumption of delivery of the check for consideration, and if it is further conceded that the burden was on defendant to show a fraudulent alteration of the check, and that this burden was not met by defendant, it still appears that claimant assumed the burden of showing consideration for the check and failed to meet that burden, and her claim should accordingly be rejected. See Calanno Estate, 14 D. & C. 2d 153, 156. The only testimony as to services rendered to decedent by claimant was given by Mrs. Anne Growshok. She did not testify as to any specific contract, nor did she testify in detail as to the services rendered by claimant, the period for which they were rendered and the reasonable value of such services. She related a number of general conversations with decedent, and loose declarations by him, but there was no clear and convincing evidence of the type required to fix liability against a decedent's estate. Claims of this character are the subjects of just suspicion and the courts have consistently indicated that they must be established by

testimony which is clear, precise and indubitable. See Consentino v. Vittoria, 394 Pa. 538, and cases cited therein. The testimony of Mrs. Growshok did not meet the high standards set by the courts. Her loose and rambling testimony was plain evidence that she could not distinguish between fact and fiction, nor between decedent's jests and reality. The auditing judge gives no credence to the testimony of this witness.

For the reasons hereinbefore set forth the auditing judge is of the opinion that the claim of Ruth Marshall against this estate, whether based on the said $10,000 check, or on a contract or quantum meruit basis for services rendered to decedent in his lifetime, must be rejected. . . .

*Opinion sur Exceptions*

Before Boyle, P. J., Cox, Rahauser and Wolk, JJ.

RAHAUSER, J., December 16, 1959.—This case came before the court en banc on exceptions filed to the decree of the auditing judge.

The principal questions raised by the exceptions are:

1. Should the auditing judge have made a finding of fact pertaining to the signature on the paper alleged to be a check, in the amount of $10,000?

2. Could claimant sustain her claim based upon this paper?

The court is of the opinion that both of these questions must be answered in the negative. A finding of fact of the hearing judge as to the signature of the drawer of the paper would have been immaterial.

The paper was not in evidence and claimant did not offer testimony such as to permit the receiving in evidence of an obviously altered instrument. The propriety of this ruling is based upon a rule of evidences set forth in the case of Poelcher v. Zink, 375 Pa. 539, at page 546, where the court said:

"It is, of course, true that when it clearly appears on the face of a writing that it has been altered in a

material part it is incumbent on the party producing it to account for the alteration, *and until this is done it is not admissible in evidence:* Cornog v. Wilson, 231 Pa. 281, 80 A. 174; Miners Savings Bank of Pittston v. Naylor, 342 Pa. 273, 280, 20 A. 2d 287, 291."

It is also said by Judge Parker in the Miners Savings Bank of Pittston v. Naylor, 342 Pa. 273, at page 280:

"Since this note contained a material alteration apparent on examination, the burden *was upon the holder to explain it before it was received in evidence:* Neff v. Horner, 63 Pa. 327; Citizens National Bank v. Williams, 174 Pa. 66, 34 A. 303. The law presumes that one who has taken a negotiable instrument containing a material alteration 'had not only satisfied himself of the innocence of the transaction, but that he had provided himself with the proofs of it to meet a scrutiny he had reason to expect': Chief Justice Gibson in Simpson v. Stackhouse, 9 Pa. 186, 187."

It is therefore clear that the court was not in error in refusing to admit the paper in evidence. The paper not being in evidence, it is immaterial whether the signature was bona fide or not.

Claimant, however, cannot sustain her claim even if the instrument was offered in evidence and the court had found that the signature was authentic. Claimant attempted to prove the consideration for the instrument. This attempt to prove consideration failed.

The hearing judge found that the testimony offered by the witness for claimant in support of her claim was incredible. The hearing judge being the finder of fact on this question, it is not open to question. A reading of the testimony given fully substantiates the finding of the fact.

The law is well settled on this point that where claimant, having proved the execution of the note, goes farther and attempts to prove the consideration and fails, the claim falls.

506 

As Judge Bolger said in the Calanno Estate, 14 D. & C. 2d 153, at page 155:

"Counsel for exceptants sought to rely upon the principle of law that claimants having proved the execution and delivery of the notes, they were not required to go further and prove consideration, the burden shifting to the estate to prove a lack of consideration. This is a correct exposition of the law (Conrad's Estate, 333 Pa. 561), but it does not apply here because the claimants after presenting their notes, went further and introduced testimony in anticipation of the defense of failure of consideration. This they had a right to do. But in doing so, they relieved the accountant of the burden of proving lack of or failure of consideration: Katz v. Katz, 309 Pa. 115; Tate v. Connor, 184 Pa. Superior Ct. 427. . . ."

The record is clear that the exceptions must be dismissed and a decree will be drawn in accordance with this opinion. See Méllier's Estate, 320 Pa. 150, and Keally's Estate, 275 Pa. 455.