## Neff *et al.* versus Horner.

| 63 | 327 |
|----|-----|
| 150 | 28 |
| 63 | 327 |
| 153 | 9 |
| 63 | 327 |
| 169 | 571 |
| 63 | 327 |
| f 211 | 1 120 |

1. A voluntary alteration of a bond, note or other instrument under seal in a material point, to the prejudice of the maker, avoids it unless done with the assent of the parties to be affected.

2. The rule as to commercial paper is more stringent, the burden being on the holder to disprove an apparent material alteration on the face of the paper.

3. Worrell *v.* Gheen, 3 Wright 288, is an exceptional case.

4. A spoliation by a stranger or accidental alteration through mistake, leaves the instrument as effectual in law as it was before.

5. Pennington, and others as his sureties, executed a sealed note to Horner; when brought to Horner he would not receive it unless " interest semi-annually" were added. Pennington inserted these words above the signatures, without the knowledge of the sureties. *Held*, that the whole note was avoided as to the sureties.

6. The ground of the rule that alteration avoids an instrument is public policy to insure the protection of the instrument from fraud and substitution.

7. The purpose of the rule is to take away the motive for alteration by forfeiting the instrument on discovery of the fraud.

8. In a case in which the question was a material alteration of an instrument, a plea of non est factum was filed, but not noted on the judge's trial list. The case proceeded till the charge, as if the plea had not been filed ; the court refused then to take notice of the plea. *Held* to be error.

November 16th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county:* No. 216, to October and November Term 1869.

This action was in debt by Samuel Horner against John Neff, Joseph Dougherty, Thomas Wiley and Thomas Curl, on the following note :—

" $500—November 13th 1865. One year after date we or either of us promise to pay to Samuel Horner the just sum of Five Hundred Dollars in seven thirties for value received of him, whereunto witness our hands and seals.

Interest to be paid semi-annually.

JACOB A. PENNINGTON, [L. S.]<br>
JOHN NEFF,　　　　　[L. S.]<br>
JOSEPH DOUGHERTY,　[L. S.]<br>
THOMAS WILEY,　　　[L. S.]<br>
THOMAS CURL,　　　　[L. S.]".

The pleas were *non est factum, nil debet* and payment with leave,

&c. The plea of *non est factum* was not entered at the time of trial on the trial list prepared by the prothonotary for the judge; the parties proceeded in the trial until the charge, as if the plea had not been filed.

On the trial before Gilmore, P. J., the plaintiffs gave the note in evidence and rested.

The defendant called Jacob A. Pennington, who testified, that he was principal in the note and the other obligors his sureties; that the words "Interest to be paid semi-annually" were not in the note when the sureties signed it; there was no understanding that the interlineation was to be made. When the note was delivered to the plaintiff the interlineation was not in it.

The plaintiff testified in rebuttal that he saw Pennington write the interlineation; that he, plaintiff, would not take the note until he had done so. Pennington told him he was at liberty to write it, that it was so understood by the bail. There was other evidence that the interlineation was made after the execution of the note; there was no evidence that it was made with the consent of the sureties.

The plaintiff's first point was:—

"Under the pleadings in this case the execution of the note on which suit is brought, and the plaintiff's cause of action as set forth in the declaration which recites the note, are admitted, and that all the evidence in relation to the words 'interest to be paid semi-annually' is not to be taken into consideration by the jury."

The defendants' points among others were:—

"1. The alteration of the note by adding the words 'interest to be paid semi-annually,' is a material alteration."

2, 3 and 4. Asserted that the alteration although made by Pennington was not binding on the sureties unless made with their consent.

"7. The parties having gone on with the investigation of the question of the making of the alteration of the note, and each party having given evidence bearing on the question, the plaintiff cannot on the argument to the court raise the objection that such evidence was properly admissible only under the plea of *non est factum*, and that such plea not being in the question of the alteration, cannot be considered. Under these circumstances the court ought to disregard the objection, or permit the proper plea to be put in now."

Answer: "The body of the note as executed by defendants was not the subject of evidence; all that was investigated was the alteration. We cannot allow the plea of *non est factum* to be put in after the note is received in evidence and the case is closed; and we so noted when the request was made at the moment the counsel were proceeding to address the jury, and after all the evidence had been given, and the note received in evidence."

[Neff *v.* Horner.]

"Note by the court: While the court was charging the jury, it was discovered that the plea of *non est factum* was actually in, but not on the judges' docket. The court were now requested to take notice of this, but refused to do so for the reason that the trial had been conducted on different pleas."

The court (Gilmore, P. J.) charged: * * *

" The first points made by the plaintiff involve the same matter. The pleading in the case admits the execution of the note, and under the plea of payment with leave, nothing but equitable matter can be alleged as defence. This alteration, as it is called, is not obligatory on the defendants unless they consented to the alteration. This consent is denied on oath by defendants, and is not proved by the plaintiff, and no recovery can be had for any interest on the note before it became due. But if the plea *non est factum* had been put in, we would have held in answer to the defendants' first and second points, that the alteration would not have affected the obligation of defendants to pay the note, as it was when they executed it. It appears if the evidence of Horner is relied on, that when the note was brought to him, signed by all the defendants, he would not receive it unless it contained an obligation to pay the interest semi-annually. Pennington then informed him that he had authority to add this, and did so, by making this alteration or memorandum, whereupon Horner gave him the money or bonds. It is true, Pennington denies this, and the defendants on oath say they gave no such authority. Now this writing below the body of the note is not an interlineation, nor in the judgment of the court is it an alteration of the body of the note, which had already been executed, signed and sealed, but a mere *side memorandum* which might as well have been on the back of the note. It is sufficient in our opinion, that it should be ruled that it is no part of the note, and that the plaintiff can derive no advantage from it. This we think, where no fraud was intended, is sufficient; the plaintiff gains nothing, and the defendants lose nothing, and we see no reason to be forced to say that the memorandum is a part of the obligation and releases the parties from an obligation admitted to be fair." * * *

The verdict was for the plaintiff for $503.37.

The defendants took a writ of error and assigned for error :—the charge; the answer to their 7th point; and "not allowing the defendants the full benefit of the plea of *non est factum*, when it was discovered to be a part of the record in the case."

*A. A. Purman* (with whom were *Wyly & Buchanan*), for plaintiffs in error.—The alteration was in a material part and the note was void: Babb *v.* Clemson, 10 S. & R. 419 ; United States Bank *v.* Russell, 3 Yeates 391 ; Miller *v.* Gilleland, 7 Harris 120 ; Marshall *v.* Gougler, 10 S. & R. 164 ; Henning *v.* Werkheiser,

[Neff *v.* Horner.]

8 Barr 518; Byles on Bills 475; Warrington *v.* Early, 2 Ellis & B. 762; 2 Parsons on Bills, 545; Addison on Contracts 1083, 1084. The record as to the plea might have been amended: Smith *v.* Hood, 1 Casey 220.

*R. W. Downey*, for defendant in error.—The alteration could not be shown except under the plea of *non est factum*: Piggott's Case, 11 Rep. 27. The application for amendment was too late: Ridgely *v.* Dobson, 3 W. & S. 118; Hartman *v.* Keystone Ins. Co., 9 Harris 474. The plaintiff was not allowed to recover more than the sureties were bound for by the note as they signed it: Worrell *v.* Gheen, 3 Wright 388.

The opinion of the court was delivered January 31st 1870, by

Agnew, J.—It seems to be settled that a voluntary alteration of a bond, note or other instrument under seal, in a material part, to the prejudice of the obligor or maker, avoids it; unless done with the assent of the parties to be affected by it: 1 Greenleaf's Ev. § 565; Marshall *v.* Gougler, 10 S. & R. 164; Barrington *et al. v.* Bank of Washington, 14 S. & R. 422–3; Foust *v.* Renno, 8 Barr 378; Henning *v.* Werkheiser, Id. 518; Smith *v.* Weld, 2 Barr 54. Such a wilful act differs from spoliation by a stranger, or accidental alteration done through mistake, where the instrument remains effectual in law, as it was before alteration: 1 Greenleaf's Ev. §§ 566, 568.

In respect to bills, notes and other commercial paper, the rule is even more stringent, the law casting on the holder the burthen of disproving any apparent material alteration on the face of the paper: Stephens *v.* Graham, 7 S. & R. 505; Simpson *v.* Stackhouse, 9 Barr 186; Paine *v.* Edsell, 7 Harris 178; Miller *v.* Reed, 3 Casey 244.

The only Pennsylvania case that seems to run against this strong current of authority is Worrell *v.* Gheen, 3 Wright 388, but it is plainly exceptional. The opinion declares on the general principle strongly, but makes the case an exception on the ground that the plaintiff had no hand in the alteration, and because the case being stated for the opinion of the court, they were met by no discrepancy between the *allegata* and *probata*. How far the grounds of distinction may be deemed satisfactory, it is of no importance, for it is sufficient that the case is made an exception expressly.

In the present instance, however, the plaintiff, who was examined on his own behalf, admitted that Pennington, the principal in the note, made the addition in his presence. He saw him do it. He would not take the note till Pennington did so. The latter said he had authority from his sureties, but this was untrue. The alteration was not accidental, and the plaintiff, though guiltless

[Neff *v.* Horner.]

of the fraud, was foolish to accept a note he himself saw altered by the principal without being certain he had authority to bind his sureties.  The alteration was material, for it added interest to the principal.  It was not out of the way, so as to be no part of the note, for its position at the foot of the note, and by way of continuation, would have bound the sureties to the payment of interest, had there been authority from them to write it there.  It was material in the eyes of the plaintiff, for he refused to take the note without interest added to it, and brings the suit upon it in this altered state.  The note was, therefore, avoided as to the sureties, and the court erred in holding that the plaintiff could recover the principal from all the parties, disregarding his claim for the interest.  It is argued that a recovery of the principal sum does no harm, for to that extent the sureties bound themselves.  But the conclusive answer is that stated by Mr. Greenleaf, *supra,* § 565.  The ground of the rule is public policy to insure the protection of the instrument from fraud and substitution.  The writing goes into the hands of the party who claims its benefit, and the purpose is to take away the motive for alteration, by forfeiting the instrument on discovery of the fraud.  When the sureties signed it they had a right to have it delivered unaltered to the plaintiff.  He was bound to know that the alteration was rightfully done, and that the penalty of his negligence, or his wrongful act, was a loss of the security.

As to the plea of *non est factum,* there ought to have been no difficulty.  The plea was already on the record, and it was the mere oversight of the clerk that it did not appear on the judges' trial list.  Consequently, when informed of the fact the plea should have been allowed its proper effect; and if the court thought the plaintiff was taken by surprise, a juror might have been withdrawn, or such order made as would prevent injustice.  But as the case was submitted, a wrong was done to the defendant, which could be repaired only by a new trial; for the effect of disregarding the plea of *non est factum* on the record, was to deprive the defendant of a defence which struck at the very marrow of the plaintiff's case.

Judgment reversed, and a *venire facias de novo* awarded.