Hepler *versus* Mount Carmel Savings Bank.

1. Although any material alterations in a promissory note, after its endorsement, will invalidate it as to the endorser, yet if it be without date when endorsed, the law will imply that the endorser authorizes the filling in of the date. And such filling in, therefore, by the maker, will not relieve the endorser from liability.

2. Where a witness is called to testify to a previous examination of a deceased witness, he may, where he cannot recollect the very words of the deceased witness, state in his own language the facts detailed by that witness as they were impressed on his mind at the time.

3. Such witness, in order to be competent, must have a reasonably clear recollection of the testimony of the deceased witness, both on the examination in chief and on cross-examination. And if he has the same general recollection of one as of the other, without special verbal recollection of either, this is sufficient.

4. Cornell *v.* Green, 10 S. & R. 14, and Wolf *v.* Wyeth, 11 Id. 150, followed.

March 15th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Schuylkill county:* Of January Term 1881, No. 24.

This was an action of assumpsit brought by the Mt. Carmel Savings Bank against Daniel M. Hepler, on the following promissory note.

                                                                    May
$2500.                              Ashland, ~~Apr.~~ 4, 1875.
Sixty days after date I promise to pay to the order of Daniel M. Hepler, twenty-five hundred dollars, at Mt. Carmel Savings Bank, with defalcation value received.
Credit the drawer, Daniel M. Hepler.        NATHAN BOLICH.
Endorsed, DANIEL M. HEPLER.

Pleas, non assumpsit, payment, with leave, &c.

On the trial, before WALKER, A. J., the plaintiff offered in evidence the promissory note, to which the defendant objected, on the ground that it shows upon its face an alteration of the date from April 4th to May 4th 1875.

The plaintiff thereupon called A. M. Montelius to explain the alteration, who testified in his preliminary examination substantially as follows: "I am cashier of the bank plaintiff. In April and May 1875, H. D. Rothermel was cashier; he is now dead. Upon the trial of this case before arbitrators, Mr. Rothermel testified as a witness as to the circumstances of the alteration. I was present. I cannot give the words used by him, but can give the substance of what he said as to who wrote the words April and May 4th. There was a long cross-examination which I cannot recall, but I

[Hepler v. Mt. Carmel Savings Bank.]

remember that he did not contradict himself on cross-examination relating to the date of the note and the attending circumstances. The evidence was the same on cross-examination as it was on the examination in chief, on this subject." The defendants objected to the admission of the witness' testimony of his recollection of Rothermel's evidence, because it did not propose to connect Hepler, the defendant, with the alteration, and having been given before arbitrators was inadmissible in this action. The objection was overruled, and the witness testified substantially as follows: "I was a director of the bank in 1875. The bank held a note of Bolich, endorsed by Hepler for $2500, due May 4th 1875. That note was not paid at maturity, but was renewed by another note for the same amount. The renewal note was presented to the board on May 11th, the first meeting day after May 4th. When presented the date of the note was entirely blank. I called Mr. Rothermel's attention to the blank and left the note in his hands, previously filling in the figure 4 in lead pencil as a memorandum.

"Mr. Rothermel testified before the arbitrators, in substance, that the blank had escaped his notice when he received the note, and as soon as he discovered the omission he wrote to Mr. Bolich, who afterwards came to Mt. Carmel; that Mr. Bolich, in proceeding to fill in the date, began writing April by mistake and discovering the error drew his pen over ' Apr.' and wrote ' May ' instead of it. The bank discounted the note."

The defendant called Nathan Bolich, the maker of the note, who swore that he filled out the note at his house in Ashland, and that he wrote " Apr." for April at the same time and before Hepler endorsed it. That after getting it endorsed he took it to Mr. Rothermel for discount and got the proceeds; that on receipt of a letter from Mr. Rothermel he went to Mount Carmel and saw Rothermel. " Mr. Rothermel then brought out the note and said, you made a mistake in the month, it should be May instead of April; he (Rothermel) took his pen and crossed out Apr. and I wrote May 4th above it."

The defendant, Hepler, testified: " April was written there when I endorsed the note. Bolich's boy brought the note to me and I noticed the word April there; I am sure of it. Bolich's son read the note, he read it April ; I did not know of the alteration."

John McClellan testified, as an expert: " The word ' Apr.' is written in the same ink that the body of the note is written in. The ' May' appears to be written in darker ink. The marks striking out ' Apr.' appear to be in the same ink as that in which ' May' is written."

Verdict and judgment for the plaintiff for $3055.41. The defendant took this writ of error, assigning for error the admission of the note in evidence and the admission of Mr. Montelius to testify as to his recollection of Rothermel's evidence before the arbitrators.

[Hepler *v.* Mt. Carmel Savings Bank.]

*William A. Marr*, for the plaintiff in error.—Although the English rule, which requires the exact words of a deceased witness to be given, has been modified in Pennsylvania, it is still requisite that the witness called to testify from recollection must have a full and exact recollection of the substance of the testimony of the deceased witness, not only to his examination in chief, but also as to his cross-examination. To give the former and omit the latter would be to deprive the opposite party of the benefit of his cross-examination. Evidence of this kind is dangerous at best, and is not to be admitted unless the substance of the whole of it is given: 1 Greenleaf on Evidence, sect. 165; Watson *v.* Gilday, 11 S. & R. 342; Wolf *v.* Wyeth, 11 S. & R. 150; Bemus *v.* Howard, 3 Watts 250. The recollection of the witness Montelius fell far short of this standard.

*D. C. Henning*, for the defendant in error, cited, Cornell *v.* Green, 11 S. & R. 14; Chess *v.* Chess, 17 Id. 411; Cox *v.* Norton, 1 P. & W. 412; Insurance Company *v.* Johnson, 11 Harris 72.

Mr. Justice GORDON delivered the opinion of the court, March 28th 1881.

The promissory note, the subject of this suit, was drawn by Nathan Bolich to the order of Daniel M. Hepler, in the sum of $2500, payable sixty days after date, at the Mt. Carmel Savings Bank. By Hepler it was endorsed for the accommodation of Bolich, and by him, Bolich, transferred to the bank. When this note was presented on the trial of this case, it was discovered that the date had been altered by striking out the word " Apr.," and substituting the word " May" in its place. On objection by the defendant, Hepler, the court below properly refused to admit the note in evidence until the alteration was explained. The bank then offered proof to show that when Bolich presented the note for discount it was altogether without date, and that Bolich afterwards had himself filled in the date " Apr. 4," and immediately, on his attention being called to the mistake, had stricken out the word " Apr." and inserted " May." We think the admission of this evidence and its submission to the jury was proper. Whilst it is admitted that any material alteration in a note, after its endorsement, will invalidate it as to the endorser, yet, where it is endorsed without date, the presumption necessarily is that the drawer or endorsee is authorized to fill in the date. This is undoubtedly the rule where the sum is left blank: Worral *v.* Gheen, 3 Wright 496. And no good reason can be urged why the same rule should not apply to the date. This note was drawn for the renewal of a former one, and as the parties may not have known the exact time when the former fell due, the reason for its being endorsed without date

would, in that event, be obvious. We think, then, that, under the circumstances, this testimony was rightly admitted; hence the first exception of the plaintiff in error is dismissed.

The second exception relates to the admission of the evidence of H. D. Rothermel, a deceased witness, given at a previous trial of this same case, before a board of arbitrators. To prove what that evidence had been, a Mr. Montelius was called, who, on preliminary examination, said he could not give the words that had been used by the witness, but could give the substance of his evidence on some points, and those points were as to the date and condition of the note when presented for discount. On cross-examination, he said he could not recall to recollection any of the cross-examination of Rothermel, except that, as to the date of the note and circumstances attending it, he did not contradict himself. Under such a want of recollection of what the dead witness had sworn on cross-examination, this testimony would not be admissible, for there ought to have been such a recollection of the cross-examination, that the witness could give at least the substance of it, otherwise, as was said in Wolf v. Wyeth, 11 S. & R. 156, "to give what he swore on his examination in chief and omit his cross-examination would be to deprive the opposite party of his cross-examination."

Such testimony would be altogether one-sided, and for that reason inadmissible. Montelius, however, upon further interrogation, says "the evidence was the same on the cross-examination as it was on the examination in chief, relating to the date of the note and the attending circumstances." From this we must understand that his recollection of the cross-examination was substantially the same as that of the examination in chief; that is, he had the same general recollection of the one as of the other, but no special, verbal recollection of either. But we are inclined to think that, under our own authorities, this general, or, as it is sometimes called, substantial, recollection of what the deceased witness said, was sufficient to warrant its reception.

It is true, the contrary is held by English authorities, and these authorities have been followed by Chief Justice Shaw in Warren v. Nichols, 6 Met. 261; but, on the other hand, Mr. Greenleaf favors the more liberal rule as adopted in Pennsylvania. And we, whatever our private opinions might be, must be governed by the cases of Cornell v. Green, 10 S. & R. 14, and Wolf v. Wyeth, supra. Furthermore, by attention to the language of Chief Justice Gibson, in the case of Cornell v. Green, we may readily formulate the rule governing cases of this kind. "I take it," he says, "that wherever the facts from which a witness received an impression are too evanescent in their nature to be recollected, or are too complicated to be separately and distinctly narrated, his impressions from these facts become evidence; and this on the

[Hepler *v.* Mt. Carmel Savings Bank.

ground that it is the best evidence of which the nature of the case is susceptible. * * * I cannot, therefore, see why the same necessity which opens the way for secondary evidence of the very words of a deceased witness, should not also open the way for the substance of his testimony when his very words cannot be recollected; or discover the policy of a rule which would shut out the little light that is left, merely because it may not be sufficient to remove everything like obscurity." From this I take the rule to be, where the witness on the stand cannot recollect the very words of the deceased witness, he may state in his own language the facts as detailed by that witness, as they were impressed on his mind at the time; and this applies as well to the cross-examination as to the examination in chief. All that is required is that the recollection of the witness be reasonably clear as to the fact testified to, and how, if at all, such testimony was affected by the cross-examination. As a rule, this is all that can be required of ordinary witnesses, and the adoption of a greater degree of strictness would result in the total exclusion of such evidence, for the exception is rare where a conscientious witness will undertake to do more than this. Judging by this rule, we think the evidence complained of in this case was well admitted.

The judgment is affirmed.