Pyles, Exrx., *v*. Bosler, Exrx. (et al., Appellant).

Argued January 8, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph P. McKeehan,* for appellant.

*E. M. Biddle, Jr.,* with him *H. T. Ames* and *Thos. E.
Vale,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 30, 1934:
The four appeals decided in this one opinion, are from
the final judgment in the case which was before us, on
appeal from an interlocutory order, in Pyles v. Bosler,
308 Pa. 297. We there said "We will not discuss the
facts presented in this confused record"; we are glad we
are not required to do so here, where the present record
is even more confused. We have now more than forty

assignments of error, two of which are each subdivided into forty-three separate paragraphs. Every point raised in this extended litigation, whether important or unimportant, seems to be raised anew in the assignments of error, and are argued at length in the briefs. Happily, the judgment will be affirmed, as it should be, without wandering through the Daedalian labyrinth, so ingeniously but uselessly constructed.

The purpose of the litigation is to charge the real estate left by defendant's testator, Frank C. Bosler, with the lien of a debt alleged to have been due by him to plaintiff's testator, H. W. Pyles. In determining whether or not the record sustains the court below in its conclusion that the realty is still chargeable therewith, we find there are but two basic questions to be determined: (1) Was plaintiff's testator a creditor of defendant's testator when the latter died? and (2) If he was, was the lien kept alive in the way prescribed by paragraphs (a) and (b) of section 15 of the Fiduciaries Act of June 7, 1917, P. L. 447, 476, as amended by the Acts of May 2, 1919, P. L. 104 and 105, and June 7, 1919, P. L. 412, 413?

The first of those questions is readily determined. Defendant was residuary devisee and legatee of her husband's will, and was also executrix thereof. In due course, she filed her account of the personal estate left by him, and at the audit claimed the residue after the payment of his debts. She was, therefore, before the orphans' court in both the capacities in which she appears in the present proceeding, viz., as executrix and as an individual. So, also, plaintiff, at the audit of that account, presented the same claim as she makes here concerning the indebtedness of Mr. Bosler to Mr. Pyles, and it was admitted by defendant to be correct. After a number of proceedings, not necessary to be stated, the claim was allowed by that court, and a decree entered accordingly. It has never been paid, however. That decree stands unappealed from and unreversed, and the particular question now under consideration is, there-

fore, res adjudicata. True, the liability was not strenuously contested there as it has been here, but this is a matter of no importance, since every defense which could have been there made against plaintiff's claim that her testator was a creditor of Mr. Bosler, at the time of his death, is as much concluded by that decree of allowance as are those which were in fact made: O'Connor v. O'Connor, 291 Pa. 175; Ætna Explosives Co. v. Diamond Alkali Co., 277 Pa. 392; Reading Co. v. Spink, 263 Pa. 443.

The second and only other basic question necessary to be considered is: Was the lien of that indebtedness kept alive in the way prescribed by the Act of 1917 as amended, so as to continue the lien of the debt upon the real estate? Although this is not as readily answered as the one already considered, nevertheless it is equally as certain in its answer.

At the time of his death, Mr. Bosler was domiciled in Cumberland County, where his widow, who is his executrix and residuary devisee, still lives; his will was probated in the office of the register of wills of that county; the land sought to be charged with his debt to Mr. Pyles is also located there; and all the proceedings, taken in order to preserve the lien of the debt as against that land, were taken in the office of the prothonotary of the court of common pleas of that county. If, therefore, those proceedings conformed to the statute, they operated to preserve the lien, as the court below correctly decided that they did. Whether they did or did not, is ordinarily a matter readily determinable by a consideration of the record dates upon which the necessary steps were taken, but here there are a few preliminary questions to be decided before we can fix all of those important dates.

The indebtedness due to Mr. Pyles arose out of Mr. Bosler having been surety for the payment of certain bonds, owned by the former and payable to bearer, which bonds were issued by the Iron Mountain Ranch Com-

pany, a corporation of the State of Wyoming, in which Mr. Bosler was largely interested. At the time of the latter's death those bonds were not due and payable, and, of course, his liability as surety could not be enforced until they were. Each of the bonds stipulates that the ranch company would pay the bearer the semiannual interest thereon on the first day of each March and September until the principal falls due; and that "In case of [the] nonpayment of any installment of interest which shall have become due and which shall have been demanded, if such default shall continue for three months after maturity on such installment, then the principal hereof [that is of the bond] shall become due in [the] manner provided in the trust deed hereinafter mentioned." The installments of interest which fell due March 1, 1926, and September 1, 1926, were not paid at maturity, nor within three months thereafter. Appellant claims that the principal of the bonds, by reason thereof, became due, and hence the lien on the land was lost by lapse of time, since an action to recover the amount of the indebtedness was not brought within one year after the expiration of the three months' period from March 1, 1926, namely, on or before June 1, 1927. There was nothing "provided in the trust deed," however, as showing the manner in or by which the principal "shall become due." Hence, as it was to mature only in the "manner provided in the trust deed" it never did become due because of the nonpayment of that installment of interest. It is not necessary to consider what would have been the effect if that clause in the bonds had been omitted; whether the acceleration clause would then, though in form absolute, have been, in legal effect, anything more than an optional right in the creditor which might be waived by him; as to which see Keene Five Cent Savings Bank v. Reid, 59 C. C. A. 225, certiorari refused 191 U. S. 567. The clause not having been omitted, however, the refusal of the court below to allow plaintiff to recover from defendant's estate the amount

of interest which fell due on those two dates was certainly giving to it all that it was entitled to have. The bonds themselves stipulate that they will fall due "on the first day of March," 1927, which is, therefore, the earliest date at which it can be said they absolutely became due and payable, and Mr. Bosler's estate became liable on his suretyship obligation, at least so far as regards the principal of the bonds.

All the other relevant dates, are matters of record and are undisputed; hence, we can now consider the requirements of the controlling statutes on the subject of preserving the lien of decedent's debts as against his real estate, and apply them to the dates disclosed by this record. The statute, as amended, provides:

"(a) No debts of a decedent......shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent......and be duly prosecuted to judgment."

"(b) No bond, covenant, debt, or demand, which is not payable within the said period of one year after the decease of the debtor, shall remain a lien upon the real estate of such decedent longer than one year after his death, unless, within said period after his decease, a copy or particular written statement thereof be filed in the office of the prothonotary of the county where the real estate to be charged is situate, and be indexed against the decedent and the executor or administrator in the judgment index in the county where the executor or administrator resides, and also in the county in which the real estate sought to be charged is situate; and then to be a lien only for the period of one year after the said bond, covenant, debt, or demand becomes due, unless, within said period of one year, an action for the recovery thereof be brought, indexed, and duly prosecuted to judgment as provided in clause (a) of this section: Provided, That when such bond, covenant, debt, or demand does not be-

come due within five years from the date of the death of such decedent, a renewal of the entry of such action upon the judgment index as aforesaid, shall, upon the order of the plaintiff or his attorney duly filed in said prothonotary's office, be noted on said index within every recurring period of five years, otherwise the same shall cease to be a lien."

In determining, under those statutes, whether or not the lien of Mr. Bosler's debt to Mr. Pyles was preserved as to the land in Cumberland County, of which he died seized, we find the record discloses the following:

1918, December 2d. Mr. Bosler died.

1919, November 10th. Plaintiff filed a particular written statement of her claim against his estate, naming his executrix and devisee as defendants, in the office of the prothonotary of the Court of Common Pleas of Cumberland County, and it was duly indexed against them on the judgment index thereof.

1923, October 22nd. Plaintiff filed a renewal of the entry of her claim against the defendants in the same office and it was duly indexed against them on the judgment index thereof.

1927, March 1st. Mr. Bosler's liability to plaintiff became due and payable.

1927, July 21st. Plaintiff brought the present suit against the executrix and devisee, at first by a writ of scire facias, which was later, by leave of court, amended to an action of assumpsit.

1931, October 28th. Defendants appealed to this court from an interlocutory decision of the court below on one of the questions raised by them. Pending the determination of that appeal, time did not run against plaintiff, since she could take no further steps in the cause until the record was returned to the court below: Harwood v. Bruhn, 313 Pa. 337. The case was sub judice. If this were not so, a litigious defendant might readily defeat a plaintiff's right by taking a series of appeals from interlocutory orders of the court below.

1932, July 18th. Remittur of record from this court filed in the court below.

1932, September 27th. Case tried and verdict rendered for plaintiff.

1933, February 2d. Judgment entered on the verdict.

1933, February 18th. Defendants took the present appeals.

This tabulation, if correct, clearly sustains the judgment of the court below. It is first objected, however, that when plaintiff brought suit on Mr. Bosler's suretyship agreement, she erred in proceeding by a writ of scire facias, and that the court below erred in allowing its amendment to that of an action of assumpsit. As plaintiff was seeking to revive and continue the lien of her claim against Mr. Bosler's estate, it is by no means clear that a writ of scire facias was not the proper way to proceed. See Kirk v. Van Horn, 265 Pa. 549, 552. It is the usual writ where, in other instances, it is sought to revive and continue existing liens. We need not stress this point, however, nor appellant's denial of the right of the court to allow the amendment, (as to which see Act of May 10, 1871, P. L. 265, and Taylor v. Hanlon, 103 Pa. 504), since defendant appeared to the action unqualifiedly, not de bene esse, thereby being in court as effectually as if served with a summons assumpsit; and, being there, was called upon to defend the action no matter how she got there. This she has most consistently and persistently attempted to do.

The only other objection to the proceedings as scheduled, is the allegation that the final judgment as above stated was not entered on February 2, 1933, but on May 16, 1933, which was too late to continue the lien. It appears that on the first mentioned date the court below filed with the prothonotary its opinion, wherein it directed that judgment should be entered in favor of the plaintiff. That official duly entered on the appearance docket the fact that such a judgment was directed, but

by an oversight did not formally note the entry of the judgment itself on that docket, but did record it on the judgment and ad sectam indexes. This would appear to be sufficient, but apparently fearing that he had made a mistake in the respect stated, the prothonotary, on May 16, 1933, formally made note of the entry of the judgment on the appearance docket as of February 2, 1933, the date when, as he supposed, he should have entered it there. Under the Act of May 2, 1919, P. L. 104, 105, supra, the entry of the judgment on the judgment index would appear to be all that was required, but this also need not be definitely decided. If there was no judgment until May 16, 1933, when the note of the entry thereof was made on the appearance docket, then this appeal, which was taken February 18, 1933, was taken before there was a final judgment, and hence should be quashed. Admittedly it is now too late to take another appeal. To avoid thus penalizing defendant, we have herein considered the case on its merits.

Appellee seems to think that some of the objections above referred to and answered, are also answered by the fact that Mr. Bosler's will provides "All the balance of my estate of every kind and nature [which includes the land herein sought to be charged with the debt he owed Mr. Pyles] I give by will to my wife Hannah Elizabeth Swank Bosler...... Payment of almost all my obligations both direct personal debts and contingent obligations is provided for by life insurance policies. *All not so provided for are to be paid by my executor out of my estate.*" We do not think this has any bearing on the questions we have considered, nor could we consider it if it had, since it was not urged before the court below. Doubtless, under that provision of the will, plaintiff could have proceeded in the orphans' court, at a much less expenditure of time and money than the present proceedings have caused. She could thereby have forced, if necessary, a sale of the land thus charged with the debt,

in order to obtain its payment: Steel v. Henry, 9 Watts 523; Kirk v. Van Horn, 265 Pa. 549, 559.

Each of the four appeals is dismissed, and the judgment of the court below is affirmed.