# Dixon *v.* Metropolitan Life Insurance Company, Appellant.

Argued April 20, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*D. C. Jennings,* for appellant.

*Edward G. Bothwell,* for appellee.

OPINION BY RHODES, J., July 13, 1939:

This is an action in assumpsit on a certificate of insurance, and the question is whether the evidence was sufficient to warrant the jury in finding that the death of deceased was caused directly and independently of all other causes by accidental means, as required by the provisions of a policy of group insurance under which deceased was insured as an employee of Jones & Laughlin Steel Corporation. Defendant has appealed from the judgment entered on a verdict for plaintiff, the beneficiary named in the certificate issued to deceased.

The provisions of the group policy [1] and the certificate [2] in so far as they are relevant to the issue in this case, are printed in the margin.

Appellant paid to appellee the sum of $1,000 of life insurance as provided by said certificate, but refused

---

[1] "Metropolitan Life Insurance Company ...... hereby agrees, upon receipt of due notice and proof that any Employee insured hereunder has suffered, as a result of bodily injuries sustained while insured hereunder and caused directly and independently of all other causes by violent, external and accidental means, any of the losses enumerated in the Schedule of Indemnities hereinafter contained, provided such loss occurs within ninety (90) days from the date of such accident,

"To pay to such Employee, if living, otherwise to the Beneficiary, the amount specified for such loss in said Schedule:
    "Schedule of Indemnities
"Full amount of insurance according to formula, for:
"Loss of life. ......"

[2] "If the Employee suffers, as a result of bodily injuries sustained while insured under said Group Policy and caused directly and independently of all other causes by external, violent and accidental means, any of the losses enumerated in the Schedule of Indemnities shown below and provided such loss occurs within ninety (90) days from the date of such accident, the amount of

to pay appellee the sum of $1,000 of "accidental death" insurance. In her statement of claim appellee averred: "(4) On May 10, 1937, at or about 7:20 o'clock p. m., said Raymond E. Duffy suffered the loss of his life as a result of a fractured skull and other bodily injuries sustained while insured under said 'Group Policy No. 4000 G' and caused directly and independently of all other causes by external, violent and accidental means, to-wit, by being accidentally struck by a moving passenger train on the B. & O. Railroad at or near Hiland Stop in or near Pittsburgh, Allegheny County, Pa., on May 10, 1937, at or about 5:34 o'clock p. m." The corresponding paragraph of the affidavit of defense was as follows: "Four. It is admitted that the said Raymond E. Duffy died on May 10, 1937, at or about 7:20 o'clock p. m., while insured under said Group Policy numbered 4000 G, by being struck by a moving passenger train on the Baltimore & Ohio Railroad at or near Hiland Stop in or near Pittsburgh, Pennsylvania, but it is denied that the death was caused directly and independently of all other causes by accidental means, and on the contrary, affiant is informed, believes and expects to be able to prove upon the trial of this case, and therefore avers, that the death of the said Raymond E. Duffy was the result of his own intentional and voluntary action and was not caused by accidental means within the meaning of the said policy." Consequently, it is clear that the death of the deceased occurred by reason of means that were

---

Accidental Death and Dismemberment Insurance, then in force thereunder on account of said Employee, will be paid to the said Employee, if living, otherwise to the Beneficiary. This benefit shall be in addition to any benefits otherwise payable under said Group Policy.

"Schedule of Indemnities

"Full amount of Accidental Death and Dismemberment Insurance for:

"Loss of life. ......"

"external" and "violent," and the only issue was whether they were "accidental."

Deceased resided with appellee, who is his aunt, and her husband. Appellee proved that at the time of his death deceased was 21 years of age, of a cheerful disposition, in good health, had no worries, and of good character. It was shown that he left his home at about 9 p. m. to go to work on the day preceding his death, saying, "So long, I will see you tomorrow." He usually returned at about 8 a. m. the following day. Neither appellee nor her husband ever saw him alive again. On behalf of appellee it was testified that the place where deceased was killed was about a mile from his home which could have been reached by a path through a woods. At the close of appellee's case, under the rule of the county court in which this case was tried, appellant moved the court to direct a verdict in its favor on the ground that plaintiff had not made out a case of death by accidental means. When this motion was refused appellant did not rest, but called as its witness the engineer of the locomotive that struck deceased. He testified that his train was traveling at about 45 miles per hour, entering a "fairly sharp curve" to the left. The engineer was seated on the right side of the engine. As it was on its way around this curve he saw deceased for the first time "probably sixty feet, between sixty and seventy-five feet, something like that —a couple of rail lengths" away. "He was sitting on the end of the ties outside of the rail ...... with his knees up, and with his hands crossed like this (illustrating) and his head was down on his hands. Q. You mean with his hands across his knees? A. Yes, across from one knee to the other, and his head down right on his arm." The witness said that he sounded the whistle at once, and at the same time applied his brakes. Deceased was struck by the overhang of the engine, and thrown 30 feet in the air. The engineer said that

it required "just a split second" to cover the distance between his engine and deceased.

In his argument for judgment in favor of appellant notwithstanding the verdict, counsel states: "For the purpose of this argument, we are considering only the testimony on behalf of the [appellee] without any consideration of the testimony on behalf of the [appellant]." This contravenes the principle, which we have recently emphasized, that "in entering judgment non obstante veredicto under the Act of April 22, 1905, P. L. 286, the judgment must be entered upon the evidence in the record in the court below as it existed at the close of the trial: *Dalmas v. Kemble*, 215 Pa. 410, 64 A. 559. If upon consideration of the whole evidence 'it shall appear that a binding direction for either party would have been proper *at the close of the trial*, the court may enter judgment later with the same effect': Ibid, p. 413. But, 'The court can neither eliminate evidence which may have been improperly admitted, nor insert offers of evidence which should have been admitted but were excluded; the remedy in either case is a new trial': *Mincy v. Washington Natl. Ins. Co.*, 130 Pa. Superior Ct. 285, 295, 196 A. 893. To the same effect, see *Ozanich v. Metropolitan Life Ins. Co.*, 119 Pa. Superior Ct. 52, 55, 180 A. 67; *Ellsworth v. Husband*, 119 Pa. Superior Ct. 245, 253, 254, 255, 181 A. 90; *Squire v. Merchants' Warehouse Co.*, 130 Pa. Superior Ct. 8, 14, 196 A. 915": *Huffman et al. v. Simmons et al.*, 131 Pa. Superior Ct. 370, at page 374, 200 A. 274, at page 275. See, also, *Moore v. W. J. Gilmore Drug Co.*, 131 Pa. Superior Ct. 349, 351, 200 A. 250. A fortiori must the court consider all the evidence in the record at the close of the trial, where, as here, it was properly admitted, and, what is more, introduced by the party who now wishes to ignore it. Appellant elected not to stand on its motion as made at the close of plaintiff's case (see *De Reeder et al. v. Travelers Ins. Co.*, 329 Pa. 328, 335, 198 A. 45), but chose instead

to offer testimony on its behalf. It may not complain then if such testimony is considered in the determination of its motion for judgment in its favor non obstante veredicto. If there was anything helpful to appellee in the evidence produced by appellant the former was entitled to the benefit of it.[3]

The issue was not whether deceased died by accidental means or committed suicide, but whether his death was caused by accidental means as distinguished from all other possible forms of death. *De Reeder et al. v. Travelers Ins. Co.*, supra, p. 335. In *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644, our Supreme Court laid down with particularity the rules as to the burden, measure, and nature of proof in cases of this kind, and reached the following conclusions, stated at page 511:

"1. The operative facts of the insurance policy sued upon were 'external, violent and accidental means' causing the insured's death, and any evidence, whether direct or circumstantial, that tends to prove the operative facts, is admissible.

"2. If there are in evidence credited facts or circumstances or both from which the jury may infer legitimately that the insured's death resulted from accidental means, plaintiff is entitled to recover. As to the test of submissibility of evidence to a jury, see *Brown v. Schock*, 77 Pa. 471, at 479.

"3. On plaintiff rests the burden of proving all the operative facts by a fair preponderance of the evidence. An even balancing of the evidence on the issue of death by accidental means or death by suicide denotes that plaintiff fails to sustain her burden of proof and the verdict should be for the defendant.

"Causes of action are always set forth affirmatively

---

[3] See *Finch v. Horn and Hardart Baking Co.*, 94 Pa. Superior Ct. 599; *Jones v. B. & O. R. R. Co. et al.*, 108 Pa. Superior Ct. 404, 165 A. 260.

and if they are to prevail they must be supported either (1) by facts tending to prove directly the cause of action pleaded or (2) by legitimate inferences from circumstances which have met the tests of admissibility. Mere guesses and conjectures cannot be substituted for legal proof."

In *Wainstein v. Equitable Life Assurance Society*, 318 Pa. 428, 178 A. 502, the agreement of defendant was to pay a specified sum "upon due proof that the death of the insured occurred in consequence of bodily injury effected solely through external, violent and accidental means." As in the case at bar the insured died as a result of violence, externally applied. He was run over by the engine of a passenger train. The only issue was, Were the means of death accidental? "The engineer of the locomotive which ran over the insured testified that while the train was traveling on an eastbound track at a speed of from 50 to 55 miles an hour, at 5:42 a. m. [on March 28, 1932], he saw (the track being illuminated by the locomotive's headlight) the insured cross the westbound track and 'he came across and he stopped in the middle of the [eastbound] track to put his hands on the rail. I thought [testified the engineer] he was putting caps on the track, on the rails, then he laid across the rails.'" There, as here, no motive appeared for the insured to have taken his own life. There was a verdict and judgment for plaintiff. In refusing to enter judgment for defendant n.o. v. the Supreme Court, in an opinion by Mr. Justice MAXEY, said at page 432: "There was testimony in this case which, if believed, would warrant the inference that the death of the deceased was accidental and not intentional. The statement of the engineer that the deceased apparently stooped over the rail and lay down on the track was merely the engineer's conclusion. Different persons may honestly differ as to the conclusions they draw from another's actions. The insured's actions which the engineer testified he witnessed might have

resulted from an attack of vertigo or from a tripping of his foot. Furthermore, a man in an engine traveling 55 miles an hour at 5:42 a. m. might easily be mistaken as to the actions of one who suddenly came within his range of vision. The engineer's testimony, while constituting strong evidence in support of the defense of suicide was by no means legally conclusive. Its weight was for the jury." Except that the engineer in the present case testified that deceased was sitting on the ties outside the rails, there is no material difference between the cited case and the one at bar. In the latter the engineer's opportunities for observation would seem to be even less, because he was rounding a curve, and deceased was not visible to him until he was only 60 feet away, a space that was covered in "just a split second." "The exactness of the engineer's observations and the accuracy of his statements were for the jury": *Wainstein v. Equitable Life Assurance Society*, supra, page 431. Even if deceased was in the position the engineer said he was, his intention or lack of intention to place himself voluntarily in that position was for the jury. As stated by Mr. Justice MAXEY, in the Wainstein case, different persons may honestly differ as to the conclusions they draw from another's actions. Deceased's position and actions, to which the engineer testified, might reasonably have resulted from exhaustion, or sudden indisposition, whereby the exposure of his body to the oncoming train would have been unintentional and involuntary, and the means which produced the injury thus become accidental. *Arnstein v. Metropolitan Life Ins. Co.*, 329 Pa. 158, 162, 196 A. 491. As we view the testimony in this case, a legitimate and reasonable inference from the facts and circumstances is that the death of deceased resulted from accidental means. See *Pomorskie v. Prudential Ins. Co. of America*, 318 Pa. 185, 177 A. 783.

We think that the refusal of appellant's motion for judgment in its favor non obstante veredicto was justi-

fied. The first and second assignments of error are overruled.

The remaining assignments of error relate to the refusal of a new trial. There is no merit in any of them, and they are all overruled.

Judgment is affirmed.