Hershberger, Admrx., Appellant, *v.* Hershberger, Admrx.

440

Argued September 29, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Fred B. Trescher,* of *Kunkle, Trescher & Snyder,* for appellant.

*Carroll Caruthers,* with him *Frank A. Rugh,* for appellee.

OPINION BY MR. JUSTICE STERN, November 23, 1942.

The suit is on a judgment note for $3,000, dated January 1, 1932, and payable one year thereafter, the payee being David M. Hershberger and the alleged maker Samuel W. Hershberger, his son. David M. Hershberger died April 15, 1934, and Samuel W. Hershberger October 26, 1936. In October, 1937, Arra Hershberger, daughter of David and administratrix c. t. a., d. b. n. of his estate, found the note in the pocket of his shirt in the bureau drawer of the room he had occupied. Defendant, Mary Katherine B. Hershberger, widow of Samuel and administratrix of his estate, denied any indebtedness of Samuel to David and averred that the note sued upon was a forgery. A verdict was recovered by plaintiff, but the court in banc held that the note should not have been admitted in evidence because of unexplained alterations upon its face, and entered judgment for defendant n. o. v.

The action taken by the court was erroneous if for no other reason than that the court could not eliminate

evidence that was material in securing the verdict but which it concludes was improperly admitted, and then, with that evidence out of the record, enter judgment n. o. v. The entry of such a judgment is proper only if justified by the record at the close of the trial. Manifestly it would be unfair, where a party has relied upon a favorable ruling on evidence presented by him, to enter a final judgment against him without affording him the opportunity to furnish competent proofs of which he might have availed himself had the evidence submitted by him been rejected. The only remedy under such circumstances is to grant a new trial: *Stevenson v. Titus,* 332 Pa. 100, 104, n. 2, 2 A.2d 853, 856; *Ozanich v. Metropolitan Life Insurance Co.,* 119 Pa. Superior Ct. 52, 55, 180 A. 67, 68.[1] However, defendant in the present case is not entitled to a new trial because, in our opinion, the note was properly admitted in evidence.

The alleged alterations were of two kinds. The first consisted of the insertion of the figure $3,000 and the name of the payee in the appropriate blank spaces in different ink and handwriting from the remaining portions of the note which, according to the testimony, were in the handwriting of Samuel W. Hershberger. This did not impose upon plaintiff any preliminary duty of explanation. The filling in of the blanks, if prior to the signing of the note, would clearly have been unobjectionable, and, even if subsequent, would have been justified under section 14 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, which provides that "Where the instrument is wanting in any material particular,

---

[1] Other authorities to the same effect: *Squire v. Merchants' Warehouse Co.,* 130 Pa. Superior Ct. 8, 14, 196 A. 915, 918; *Mincy v. Washington National Insurance Co.,* 130 Pa. Superior Ct. 285, 295, 196 A. 893, 897, 898; *Huffman v. Simmons,* 131 Pa. Superior Ct. 370, 374, 200 A. 274, 275; *Dixon v. Metropolitan Life Insurance Co.,* 136 Pa. Superior Ct. 573, 578, 7 A.2d, 549, 551; *Heffron v. Prudential Insurance Co. of America,* 137 Pa. Superior Ct. 69, 72, 8 A.2d, 491, 493; *Youngwood Building & Loan Assn. v. Henry,* 137 Pa. Superior Ct. 124, 127, 8 A.2d 427, 429.

the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein": *Wm. B. Rambo Building & Loan Assn. v. Dragone,* 305 Pa. 24, 26, 156 A. 311, 312; *Lincoln Deposit & Trust Co. v. Sanker,* 305 Pa. 576, 582, 158 A. 255, 256; *McComsey v. McGowan,* 325 Pa. 484, 485, 486, 190 A. 884.[2] The other alleged alteration was an almost imperceptible erasure and slight mark or line under the initial "D" of the payee's name. If this was in fact an alteration, which is doubtful, and not the mere correction of a slip of the pen, it certainly was not material, and therefore not within the rule that if a note shows on its face a material alteration the burden is upon the holder to explain it before the note may be received in evidence (*Neff v. Horner,* 63 Pa. 327; *Hartley & Co. v. Corboy,* 150 Pa. 23, 24 A. 295; *Citizens National Bank of Baltimore v. Williams* (No. 1), 174 Pa. 66, 34 A. 303; *Cornog v. Wilson,* 231 Pa. 281, 80 A. 174; *Miners Savings Bank of Pittston v. Naylor,* 342 Pa. 273, 280, 20 A.2d 287, 291). Here the court left it to the jury to say whether there was any material alteration, and the jury found there was not, as the court itself should have declared.

At the trial defendant raised the further question that the signature of the maker was not sufficiently proved, and challenged the competency of the witnesses who testified in support of it. It is true that the burden was on plaintiff to establish its genuineness: *Austen v. Marzolf,* 307 Pa. 232, 235, 161 A. 72, 73. One of plaintiff's witnesses testified that he had worked for thirteen years in a bank and trust company where Samuel W. Hershberger carried an account, had frequently cashed his checks, some of which he presented in person, and "knew his signature perfectly." He identified the sig-

---

[2] This statutory provision is merely declaratory of the common law: *Hepler v. Mount Carmel Savings Bank,* 97 Pa. 420, 422; *Wessell & Co. v. Glenn,* 108 Pa. 104, 110, 111; *Bechtel's Estate,* 133 Pa. 367, 370, 19 A. 412; *Hess v. Gerstlauer,* 214 Pa. 10, 63 A. 366; *Commonwealth v. Gutelius (No. 1),* 287 Pa. 441, 444, 135 A. 214, 215.

nature on several such checks and on the note in suit; while he had never actually stood over Samuel and watched him sign he had seen him "write his name many a time at the desk and turn over the check at the bank" either for deposit or to be cashed; he also was acquainted with the signature on Samuel's card which had been placed with the bank when the account was opened. Another witness testified that he had been employed for twenty-one years at another bank where Samuel had an account, had seen him write his name, and was familiar with his signature; on various occasions Samuel had presented checks bearing his signature which the witness cashed; he identified the signature on the note in suit as that of Samuel W. Hershberger. A third witness, who had had business dealings with him through a long course of years also identified the signature; he testified that he had seen "dozens" of Samuel's signatures on cancelled checks.

This evidence was competent and more than enough to warrant a jury in concluding that the signature on the note was genuine, especially as defendant produced no evidence to the contrary. The witnesses were not called as handwriting experts although at least the first two of them might have qualified as such (*Seaman v. Husband*, 256 Pa. 571, 575, 576, 100 A. 941, 942, 943). While checks were exhibited to them and the signatures thereon identified by them as genuine they did not base their opinion as to the authenticity of the signature on the note in suit by comparing it with the checks; therefore the rule is not applicable that, to warrant the introduction into evidence of a writing offered as a standard, there must be evidence by a person who saw the party write it, or an admission by such party of its being genuine, or evidence of equal authority (*Shannon v. Castner*, 21 Pa. Superior Ct. 294, 329; *Roloson's Estate*, 79 Pa. Superior Ct. 124). The witnesses gave their opinions merely as persons acquainted with Samuel's handwriting, as permitted by the Act of May 15, 1895,

P. L. 69, section 1. One of them testified he had seen Samuel write his name, but that is not a necessary qualification in order to enable a non-expert to testify as to the genuineness of a disputed signature. The only requirement is that he be acquainted with the handwriting of the alleged signer, and such acquaintance may be obtained in many ways, for example, from an assumption that signatures were genuine which he had long acted upon as such without challenge: *United States v. Simpson,* 3 P. & W. 437, 441; *Berkley v. Maurer,* 34 Pa. Superior Ct. 363, 370; 41 Pa. Superior Ct. 171, 182-185. Here the witnesses had for many years charged to Samuel's account money paid out in reliance upon the genuineness of the signature of his checks and he had never questioned these transactions. Certainly such a course of dealing was sufficient to acquaint them with his handwriting and to enable them to express an opinion as to the signature in controversy.

The present suit was brought within a year after Samuel's death in order to preserve the lien of the debt on his real estate in accordance with the provisions of the Act of June 7, 1917, P. L. 447, section 15 (a). The writ was originally issued against Mary Katherine B. Hershberger, Executrix of the Estate of Samuel W. Hershberger, Deceased. It being ascertained that Samuel had died intestate and that Mary Katherine B. Hershberger was not the executrix but the administratrix of his estate, plaintiff amended the caption of the case accordingly. Defendant insists that, as this change was not made within one year of Samuel's death, the lien was lost. The amendment, however, did not effect a change in the identity of the person against whom the suit was brought; that person was the legal representative of the estate, and whether, as such fiduciary, she was an executrix or an administratrix is, in this connection, wholly unimportant.

On February 16, 1940, plaintiff caused a writ of scire facias to issue against Mary Katherine B. Hersh-

berger in her individual capacity as widow, and Daniel S., Arra A., and Charles D. Hershberger as heirs at law, of Samuel W. Hershberger; the writ commanded them to appear and show "why the said lien should not be revived and the lien continued." On motion of the administratrix the court quashed the writ. This was error. Plaintiff was confronted by a dilemma. Due to no fault of her own, but to the granting by the court of a new trial and, later, the entry of judgment n. o. v., the judgment to which plaintiff is entitled was not obtained by her. Meanwhile the lien of the debt against the real estate would have been lost if a scire facias had not issued within six years from Samuel's death: *Kirk v. Van Horn,* 265 Pa. 549, 109 A. 522; accordingly plaintiff issued the writ in order to preserve the lien. It is urged by defendant that unless and until a judgment was recovered within that period a writ of scire facias would not lie. The Act of June 7, 1917, P. L. 447, section 15 (a) provides that the debts of a decedent are to remain a lien on the real estate only for the period of five years (after the expiration of one year from the decease of the debtor) unless "the same," that is, the lien, be revived by writ of scire facias against the decedent, his heirs, executors, or administrators "in the manner now provided in the case of the revival of judgments." The revival, therefore, is not of the judgment but of the lien, which is to be revived in the same manner as judgments are revived; the judgment itself does not create a new lien as a judgment ordinarily would, but merely prevents the lapse of the lien created by the statute: *Kirk v. Van Horn,* 265 Pa. 549, 553, 109 A. 522, 523. Under the act the plaintiff might, at his election, have joined the widow and heirs in the original suit; if, instead of this, they are brought subsequently on the record they are thereby afforded full opportunity to contest the claim by interposing any and all defenses to the merits: *First National Bank & Trust Co. of Bethlehem v. Laubach,* 333 Pa. 344, 347, 348, 5 A.2d 139, 142. The statute requires that the lien "be

duly prosecuted to judgment," but not necessarily that judgment be obtained within the six-year period: *Hook v. McCune*, 184 Pa. 292, 39 A. 72. It could not have been intended that where, through no fault of a plaintiff, the obtaining of judgment is delayed beyond that period, the lien cannot be preserved. Under such circumstances a writ of scire facias to revive and continue the lien is a proper procedure: *Pyles v. Bosler*, 313 Pa. 548, 555, 170 A. 897, 900.

At No. 119 the judgment n. o. v. is reversed, and it is directed that judgment be entered for plaintiff on the verdict. At No. 120 the order and decree granting the motion to quash the writ of scire facias is reversed, and it is directed that the writ be reinstated.