Weaverling *v.* Smith et ux., Appellants.

154

Argued April 13, 1956.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*E. F. Kelly,* with him *James A. Wright,* for appellants.

*Harry J. Schmitt,* for appellee.

OPINION BY WRIGHT, J., July 17, 1956:

Mildred H. Weaverling brought suit in assumpsit against Harry E. Smith and Cora E. Smith, his wife, to

recover the sum of $1134.00 upon a cause of action arising from a factual situation which will be hereinafter detailed. Preliminary objections were interposed and overruled. At the conclusion of the trial the jury returned a verdict for the plaintiff. A motion by the defendants for judgment n.o.v. was refused by the court en banc, and judgment was entered on the verdict. This appeal followed.

Appellants sold to appellee and her husband, since deceased, a house and lot situated on Seaton Avenue in the City of Pittsburgh. In the agreement of sale was a provision reading as follows: "The Consideration as set forth includes the paving of Seaton Avenue at the cost of the parties of the first part". Appellants had laid out a plan of lots, with unpaved streets, on which lots they erected dwellings. As each dwelling was sold, the sales agreement included a provision similar to that just quoted. The streets entirely within the plan were paved by private contractors engaged by appellants, but Seaton Avenue, which extended beyond the plan, was paved by the City. The paving of all of the streets was in accordance with city plans over which appellants had no control. In front of the Weaverling property Seaton Avenue was banked, and depressed in elevation on the Weaverling side, thus causing a lowering of grade at the property line to a depth of approximately three feet. The City thereafter petitioned for the appointment of viewers to assess benefits against the owners of the abutting properties. Benefits were assessed against 58 properties sold by appellants to individual owners, and appellants intervened in each case and eventually settled the assessments with the City. In the case of the Weaverling property, there was no intervention, and the report of the viewers was confirmed absolutely. The theory of appellee is that her damages were fixed by the viewers at $1200.00, but that the view-

ers then deducted benefits in the amount of $1134.00, which latter amount she demands from appellants under their agreement of sale.

The report of the viewers was introduced at the trial. Under the heading "Damages less Benefits Assessed", the amount of $66.00 appears opposite the name of appellee. Under the heading "Assessment of Properties Peculiarily Benefited to Pay Total Damages, Costs and Expenses", appellee's name again appears followed by the word "Nothing". H. S. Douglass, a member of the Board of Viewers which tried the Seaton Avenue cases, was called as a witness for appellee. Over objection, he testified that the $66.00 damages awarded appellee was arrived at by awarding $1200.00 for property damage and deducting therefrom $1134.00 for benefit assessment. He admitted that this information was not set forth in the report, but testified that it represented the viewers' calculation. Appellee admitted that she did not pay any money for the construction of the street. She did, however, testify as to the damage caused to her property by the change of grade, and the nature of the work necessitated in order to accommodate the lot to the new grade line. At the conclusion of the testimony appellants' counsel moved for binding instructions, which motion was refused. The trial judge instructed the jurors that, if they believed the testimony of Douglass, they should return a verdict for appellee. It should perhaps be here noted that appellants' proper procedure was to file a motion for a new trial rather than a motion for judgment n.o.v. See *Hershberger v. Hershberger*, 345 Pa. 439, 29 A. 2d 95. However, on a motion for judgment n.o.v., we may grant a new trial if justice requires it: *Hartford Battery Sales Corporation v. Price*, 119 Pa. Superior Ct. 165, 181 A. 95.

Appellants principal contention is that the viewers cannot impeach their own judgment. Their position is that the testimony of H. S. Douglass was "not only incompetent, but totally irrelevant", and that "Neither the viewers nor the Court had the power to look behind a judgment in another suit, and explain it away".

When a report of viewers has been confirmed, it becomes a final judgment of the court: *Marlin v. Indiana Borough,* 61 Pa. Superior Ct. 519; *Opening of Parkway,* 267 Pa. 219, 110 A. 144. While it is well settled that a judgment may not be contradicted, there is a vital distinction between attacking a judgment and explaining it. Evidence offered to explain a judgment recognizes its validity, but shows what rights the judgment determined, or the basis of the recovery: *Follansbee. v. Walker,* 74 Pa. 306; *Kapp v. Shields,* 17 Pa. Superior Ct. 525. Matters explanatory of the record are admissible so long as they do not contradict it: *Carmony v. Hoober,* 5 Pa. 305; *Stark v. Fuller,* 42 Pa. 320. The principle is set forth in Henry, Pennsylvania Evidence, §628, as follows: "As a general rule, official court records, regular on their face, when offered in evidence in another proceeding are conclusive of the facts contained therein and may not be varied by parol. But if the record does not show what took place at a former trial or what matters were litigated, such facts may be orally shown, as they do not contradict but merely explain the record." See also, *Treftz v. Pitts,* 74 Pa. 343; *German-American Title & Trust Co. v. Shallcross,* 147 Pa. 485, 23 A. 770.

In our opinion, the testimony of Mr. Douglass was entirely proper to explain the calculations of the viewers in arriving at the conclusions shown in the report. This did not in any way contradict the report, nor the judgment resulting therefrom. Had the report in the first instance shown damages to the Weaverling prop-

erty $1200.00, and assessment of benefits $1134.00, appellants would have been compelled to pay in accordance with their agreement. Since the viewers simply set off the one amount against the other, appellee should not thereby be deprived of the full damages rightfully due. In the words of Judge SMART for the court en banc: "There is no doubt that the agreement of the defendants was to pay for the paving of the street abutting plaintiff's property. There is no doubt that the defendants have not paid a cent towards that paving. There is no question but that the property of the plaintiff was damaged to the extent of $1,200 [of which she received only $66]. It does not appear equitable that a technical rule of evidence should protect the defendants from paying a just obligation."

Appellants also contend that they "have fully satisfied their contract". They argue that the building of the street by the City changed their position; that they had let contracts to private firms to construct the other streets, but were here faced with paying benefit assessments to the City; and that their agreement was merely to provide a street at their own expense, no mention being made therein of assessments or damage awards. It is true that, when the City undertook to pave the street, the basis of payment changed from that of dealing with a private contractor to that of paying benefit assessments. Yet this changed basis of payment was, by implication, covered by the quoted provision in the sales agreement. This is in effect conceded by appellants in their brief,[1] and appellants actually recognized

[1] "But the owners were entitled to this street at no cost by Smith's agreements, and it is for this reason alone that it became his duty to pay these assessments, even though they might have included items of expense not contemplated in his agreements. His liability for the assessments arose by implication from his promise to pave the street".

their obligation by intervening in, and eventually settling, all cases where benefits were assessed.

With regard to appellee's lot, appellants take the position that the record "is conclusive that no assessment was made". However, as has already been demonstrated, the net figure allowed as damages to appellee was computed by charging the benefit assessment against the damages. While a cursory glance at the viewers' report does not disclose the amount of the benefit assessment, appellants clearly were aware that benefits were being assessed against the several lot owners. They could have readily ascertained the assessment actually made against the lot in question, and cannot escape liability by attempting to rely upon the unreasonable assumption that appellee's lot would not be subject to any assessment whatever.

Appellants further contend that appellee "has suffered no loss". They argue that if "a private contractor paved the street, and remained completely within the right of way lines as the City did in this paving, plaintiff would have had no right to property damages. Nothing was said in the agreement as to the grade or elevation at which Seaton Avenue would be paved. But a municipal corporation is liable in damages for a change of grade at the property line, even though no property is taken, and even though there is no change of grade along the center line of the street". The obvious answer to this argument is that, had a private contractor done the paving, and assuming arguendo that appellee could not in that event have recovered her damages, nevertheless appellants would have had to pay the construction cost. The fact that appellee was able to recover her damages from the City should not inure to appellants' benefit. Persons who have been unjustly enriched at the expense of others are required to make restitution. See *Zurich General Accident and*

*Liability Insurance Co. v. Klein,* 181 Pa. Superior Ct. 48, 121 A. 2d 893.

Judgment affirmed.